PREET BHARARA
United States Attorney for the
Southern District of New York
By:  NATASHA L. WAGLOW
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2528
Fax:    (212) 637-2786
E-mail:natasha.waglow@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | |
| FIRST GOLD COAST CORPORATION d/b/a | : | **COMPLAINT** |
| GOLD COAST TRADING COMPANY; DANIEL | : | |
| AHENKORA, President, | : | 15 Civ. 7854 |
| | : | |
| Defendants. | : | **ECF CASE** |

------------------------------------------------------------x

Plaintiff, the United States of America (the "United States"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, alleges upon information and belief for its complaint against Defendants First Gold Coast Corporation, doing business as Gold Coast Trading Company, and Daniel Ahenkora (collectively, "Defendants") as follows:

**INTRODUCTION**

1. This is a civil action brought by the United States on behalf of its agency, the United States Department of Agriculture (the "USDA"), for injunctive and other relief against Defendants, pursuant to the Federal Meat Inspection Act, as amended, 21 U.S.C. §§ 601 *et seq.* ("FMIA"), and the Poultry Products Inspection Act, as amended, 21 U.S.C. §§ 451 *et seq.*

("PPIA"), to prohibit Defendants from preparing, selling, and offering to sell in commerce uninspected meat and poultry food products, using marks of federal inspection without authorization, and representing the meat food products as inspected and passed.  As set forth more fully below, Defendants have repeatedly violated the FMIA and the PPIA by preparing, misbranding, and selling, and directly or indirectly transporting, meat and poultry products that were not inspected and passed as required by the statutes and regulations promulgated thereunder.

2. This action seeks redress for Defendants' violations of 21 U.S.C. §§ 610(a) and (c)(1)(A)-(B), (2), 611(b)(2) and (6) and 21 U.S.C. § 458(a)(2)(A) and (3).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 21 U.S.C. § 467c, 21 U.S.C. § 674, and 28 U.S.C. §§ 1331, 1337, and 1345.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this district, and Defendant First Gold Coast Corporation, d/b/a Gold Coast Trading Company ("Gold Coast"), has its principal place of business in the Bronx, New York, within the Southern District of New York.

## THE PARTIES

5. Plaintiff is the United States of America.

6. Defendant Gold Coast is a distributor of meat and poultry products and a retail store with its principal place of business located at 381 Canal Place, Bronx, New York 10451.

7. Defendant Daniel Ahenkora ("Ahenkora") is the President and Chief Executive Officer of Gold Coast.

8.     Defendants are and have been engaged in the business of preparing and selling, among other things, meat and poultry food products in the State of New York and within the jurisdiction of this Court.

## STATUTORY BACKGROUND

**The Federal Meat Inspection Act**

9.     The FMIA grants the Secretary of the USDA the power to regulate and inspect meat and meat products distributed in interstate or foreign commerce.  *See* 21 U.S.C. §§ 602-604, 615.

10.    Meat slaughter and processing operations and transactions wholly within a state may be regulated, if a state is designated by the Secretary as one governed by its provisions.  *See* 21 U.S.C. §§ 661(c)(1); 9 C.F.R. § 331.2.

11.    Pursuant to 21 U.S.C. § 661(c)(1) and 9 C.F.R. § 331.2, the requirements of Titles I and IV of the FMIA (21 U.S.C. §§ 601-624 and 671-680) are applicable to intrastate operations and transactions wholly within New York.

12.    Section 3(a) of the FMIA provides that, for the purpose of preventing the entry into or flow or movement in commerce of, or the burdening of commerce by, any meat product which is capable of use as human food and is adulterated, the Secretary shall cause to be made by inspectors *ante-mortem* inspection of meat in each official establishment processing meat or meat products for commerce.  *See* 21 U.S.C. § 603(a).

13.    Sections 4 through 6 of the FMIA provide that the Secretary, whenever processing operations are being conducted, shall cause to be made by inspectors *post-mortem* inspection of each carcass.  *See* 21 U.S.C. §§ 604-606.  The inspection procedures set forth in

Sections 3(a) and 4 through 6 of the FMIA will be referred to herein as "FMIA Federal Inspection."

14. The FMIA prohibits the selling, transporting, offering for sale or transportation or receiving for transportation, in commerce, of meat or meat food products capable of use as human food that are adulterated, misbranded, or that have not been inspected and passed by the USDA.  21 U.S.C. § 610(c).

**The Poultry Products Inspection Act**

15. The PPIA grants the Secretary of the USDA the power to regulate and inspect poultry and poultry products distributed in interstate or foreign commerce.  21 U.S.C. §§ 451, 452, and 455.

16. Poultry operations and transactions wholly within a state may be regulated, if a state is designated by the Secretary as one governed by its provisions.  21 U.S.C. § 454(c)(1).

17. Pursuant to the Secretary's designation, the requirements of sections 1 through 4, 6 through 10, and 12 through 22 of the PPIA became applicable to intrastate operations and transactions wholly within New York State.  9 C.F.R. § 381.221.

18. Section 6(a) of the PPIA provides that, for the purpose of preventing the entry into or flow or movement in commerce of, or the burdening of commerce by, any poultry product which is capable of use as human food and is adulterated, the Secretary shall cause to be made by inspectors *ante-mortem* inspection of poultry in each official establishment processing poultry or poultry products for commerce.  21 U.S.C. § 455(a).

19. Section 6(b) of the PPIA provides that the Secretary, whenever processing operations are being conducted, shall cause to be made by inspectors *post-mortem* inspection of

4

the carcass of each bird processed.  21 U.S.C. § 455(b).  The inspection procedures set forth in Sections 6(a) and (b) will be referred to herein as "PPIA Federal Inspection."

20. Section 9(a)(2) of the PPIA provides that no person shall sell, transport, offer for sale or transportation, or receive for transportation, in commerce, any poultry products that are misbranded or required to be inspected under the PPIA unless they have been subject to Federal Inspection and passed.  21 U.S.C. § 458(a)(2).

21. The Food Safety and Inspection Service ("FSIS") is the public health agency within the USDA responsible for ensuring that meat, poultry, and egg products are safe, wholesome, and accurately labeled.  Within FSIS, the Office of Investigations, Enforcement and Audit ("OIEA") conducts surveillance, investigations, and enforcement activities to help assure the safety of the nation's commercial supply of meat, poultry, and egg products.

## **VIOLATIONS**

22. Defendants operate primarily as a distributor of meat and poultry products and as a retail store selling smoked fish and African products.  The Gold Coast facility consists of a main floor, with multiple retail showcases, multiple freezers, multiple aisle displays, and a butcher shop toward the rear of the facility.

23. Defendants have a history of repeatedly violating the FMIA and the PPIA by preparing and selling in commerce non-federally inspected and misbranded meat and poultry food products for resale.

24. Defendants have consistently violated the FMIA by preparing and selling meat food products to third-party retail stores for resale without meeting the minimum FMIA Federal Inspection and identification obligations under the FMIA.

25. Defendants have consistently violated the PPIA by selling misbranded poultry products to third-party retail stores for resale without meeting the minimum PPIA Federal Inspection and marking obligations under the PPIA.

26. FSIS issued four notices of warning to Gold Coast, dated June 16, 2009, July 14, 2009, October 15, 2009, and April 29, 2011, in accordance with 9 C.F.R. § 335.40, for four separate, but similar, violations of the FMIA and/or the PPIA between 2008 and 2011.  *See* Exs. A, B, C, and D.

27. Each of the four FSIS notice of warning letters issued to Gold Coast informed Gold Coast that the FMIA contains criminal penalties, and that "future violations could result in legal action."  *See* Exs. A, B, C, and D.  In addition, the June 16, 2009 notice of warning letter also noted that the PPIA contains criminal penalties, and that "future violations could result in legal action."  *See* Ex. A.

28. FSIS's prior repeated warnings to Gold Coast were not successful in achieving Gold Coast's compliance with the FMIA requirements.

29. On or about March 10, 2014, Gold Coast prepared, offered for sale, and sold beef feet (approximately 156 pounds), which were not federally inspected, to Divine Markets, located in Leominster, Massachusetts, for resale.  This constituted a violation of the FMIA (the "March 10 violation").

30. On October 8, 2014, FSIS issued a Notice of Alleged Violation to Gold Coast for the March 10 violation, in accordance with 9 C.F.R. § 335.40.  *See* Ex. E.

31. On June 23, 2014, Kwabena Asamoah Adjei, Gold Coast's manager, signed a statement in connection with the March 10 violation, stating:

> I am aware and have been explained to previously by a USDA-FSIS Investigator the Federal Meat Inspection [Act] pertaining to the violations of preparing,

> offering for sale and sale of non-federally inspected meat and poultry products for resale…. I acknowledge that I have received four previous Notices of Warning….

*See* Ex. F.

32. On October 28, 2014, counsel for Gold Coast informed FSIS that "if any violations of USDA rules, regulations or laws occurred, that such violations were inadvertent and due to the failure to understand all of the regulations." *See* Ex. G.  In the letter, Gold Coast's counsel explained a plan "to bring [Gold Coast] into compliance," which included the retention of a consultant, who would assist Gold Coast "as long as is necessary to assure the company's compliance." *Id.*

33. Despite the letters of warning issued to Defendants, and Defendants' representations that they would comply with the USDA's rules, regulations and laws, Defendants continue to prepare and sell misbranded and non-federally inspected meat and poultry products.

34. On February 9, 2015, FSIS conducted a surveillance review of Asta African Food Market in Allentown, Pennsylvania and determined that on or about February 4, 2015, Asta African Food Market purchased from Gold Coast non-federally inspected whole, smoked chickens (approximately 43 pounds).  The poultry bore no mark of federal inspection or other required labeling.

35. On March 10, 2015, FSIS conducted a surveillance review of Island African Caribbean Market in Bay Shore, New York and determined that on or about March 7, 2015, Island African Caribbean Market purchased from Gold Coast misbranded smoked chickens (approximately 15 pounds) for resale.  The poultry bore no mark of federal inspection or other required labeling.

36. In addition, during the surveillance review, FSIS discovered that Island African Caribbean Market had cow feet (approximately 40 pounds) previously purchased from Gold Coast for resale. The meat was not federally inspected.

37. Permanent injunctive relief is appropriate due to Gold Coast's history of committing substantially similar FMIA and PPIA violations despite numerous warnings and repeated notifications by FSIS Investigators to educate Gold Coast regarding the FMIA and PPIA requirements.

## COUNT 1:
## PERMANENT INJUNCTIVE RELIEF
## PURSUANT TO 21 U.S.C § 674 AND 21 U.S.C. § 467C

38. The United States repeats and realleges the allegations in paragraphs 1 through 37 with the same force and effect as if set forth fully herein.

39. Title 21, U.S.C. Section 674, of the FMIA provides that "[t]he United States district courts … are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this Act, and shall have jurisdiction in all other kinds of cases arising under this Act, except as provided in section 7(e) of this Act."

40. Title 21, U.S.C. Section 467c, of the PPIA provides that "[t]he United States district courts … are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this chapter, and shall have jurisdiction in all other kinds of cases arising under this chapter, except as provided in section 457(d) or 467 of this title."

41. On or about June 16, 2009, July 14, 2009, October 15, 2009, April 29, 2011, March 10, 2014, February 4, 2015, and March 7, 2015, Defendants prepared and sold meat and/or poultry food products in violation of 21 U.S.C. §§ 610(a) and (c)(1)(A)-(B), (2) and 611(b)(2) and (6), and 21 U.S.C. § 458(a)(2)(A) and (3), because the meat and poultry products

were not inspected and passed as required by the FMIA and PPIA and the regulations promulgated thereunder.

42. Such preparation and sale of meat and poultry food products did not occur under any exemption from the FMIA, including, but not limited to, the exemption for the custom slaughter and processing of meat and meat food products under section 23(a) of the FMIA, or the PPIA, including, but not limited to, the exemption for the custom slaughter and processing of poultry and poultry products under Section 15(c) of the PPIA.  *See* 21 U.S.C. § 623(a); 21 U.S.C. § 464(c)(1)(B).

43. Accordingly, plaintiff United States of America is entitled to a permanent injunction to enforce the FMIA and the PPIA, and to prevent and restrain Defendants from continuing to violate the FMIA and the PPIA.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court grant the following relief:

a. An order compelling Defendants to comply with all applicable requirements of the FMIA and the PPIA, as well as the regulations promulgated thereunder;

b. An order permanently enjoining and restraining Defendants and their employees, agents, representatives, successors and assigns, and any and all persons in active concert or participation with any or all of them, from preparing, selling, and transporting non-federally inspected or misbranded poultry, meat, and meat food products in violation of the FMIA and/or the PPIA, and from engaging in any such future violations of the FMIA and/or the PPIA; and

    c.    Award the United States its costs and disbursements in this action and grant the United States such other and further relief as this Court deems just and proper.

Dated: October 5, 2015  
New York, New York

PREET BHARARA  
United States Attorney for the  
Southern District of New York  
*Attorney for the United States of America*

By:   *s/ Natasha L. Waglow*  
NATASHA L. WAGLOW  
Assistant United States Attorney  
86 Chambers Street, 3rd Floor  
New York, New York 10007  
Tel.:   (212) 637-2528  
Fax:   (212) 637-2786  
E-mail: natasha.waglow@usdoj.gov