DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:  MARK OSMOND
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2713
Email: mark.osmond@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>      v.<br><br>FIRST GOLD COAST CORPORATION d/b/a<br>GOLD COAST TRADING COMPANY,<br>DANIEL AHENKORA, President,<br><br>               Defendants. | **AMENDED CONSENT DECREE**<br><br>No. 15 Civ. 7854 |

WHEREAS, on October 5, 2015, Plaintiff the United States of America (the "United States"), acting on behalf of the United States Department of Agriculture ("USDA"), filed a complaint for injunctive relief against Defendants First Gold Coast Corporation d/b/a Gold Coast Trading Company ("Gold Coast") and Daniel Ahenkora (collectively, "Defendants") alleging that Defendants had violated the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601 *et seq.*, and the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. § 451 *et seq.*;

WHEREAS, on October 7, 2015, the Court entered a consent decree (the "Original Consent Decree") which permanently enjoined Gold Coast, Daniel Ahenkora, and "their members, officers, agents, servants, representatives, employees, successors and assigns, and any persons in active concert or participation with them directly or indirectly" from "selling, transporting, offering for

sale or transport, or receiving in commerce any uninspected or misbranded poultry, meat, or meat food products required to be inspected, branded, and passed by the USDA" or "engaging in any other conduct that would violate the FMIA, the PPIA, and/or the regulations promulgated thereunder," *see* Original Consent Decree, Dkt. No. 3, ¶ 3;

WHEREAS, the Original Consent Decree required Gold Coast and Daniel Ahenkora to "record the name and address of the purchaser of the product, the amount of the product purchased, the weight of the product purchased, and the invoice number, as well as a copy of the invoice issued for the sale of any poultry, meat, and/or meat product in any form over 15 pounds," *see* Original Consent Decree, Dkt. No. 3, ¶ 7;

WHEREAS, the Original Consent Decree provides that: "If Defendants transport, offer for sale or transport, or receive in commerce any product in violation of this Consent Decree, Defendants shall upon the first occasion of such violation pay to the United States the sum of five hundred dollars ($500.00) for each pound, or portion thereof, of uninspected or misbranded poultry, meat, or meat products.  If there are further occasions of such violation, Defendants shall pay to the United States the sum of one thousand dollars ($1,000.00) for each pound, or portion thereof, of uninspected or misbranded poultry, meat, or meat products.  These amounts shall be separate and apart from any other remedy that the United States may pursue for violations of this Consent Decree.  Should enforcement proceedings beyond this Consent Decree be necessary, the United States shall recover from Defendants the court costs and expenses incurred by the Food Safety and Inspection Service of the USDA in such proceedings, including investigation and preparation time," *see* Original Consent Decree, Dkt. No. 3, ¶ 8;

WHEREAS, on September 30, 2020, and January 23, 2023, Gold Coast manager, Kwabena Asamoah Adejei, signed statements, admitting to facts constituting violations of the Original Consent Decree and the FMIA and/or the PPIA;

WHEREAS, Daniel Ahenkora signed a statement on July 22, 2021, admitting to facts constituting violations of the Original Consent Decree and the FMIA and/or PPIA;

WHEREAS, Daniel Ahenkora died on or about May 7, 2023;

WHEREAS, Gold Coast is and has been operated and managed by Daniel Ahenkora's three sons, Kwabena Asamoah Adejei, Christopher Ahenkora, and Michael Ahenkora;

WHEREAS, the United States has agreed to forego seeking monetary penalties under the Original Consent Decree and to forego filing a separate lawsuit under the FMIA and/or PPIA, notwithstanding the facts constituting violations of the Original Consent Decree and FMIA and/or PPIA, and agrees to dismiss the Daniel Ahenkora and his estate as defendants, in exchange for the agreement of First Gold, and Kwabena Asamoah Adejei, Christopher Ahenkora, and Michael Ahenkora (in their individual capacities) to enter into this Amended Consent Decree;

WHEREAS, Kwabena Asamoah Adejei, Christopher Ahenkora, and Michael Ahenkora have informed the Government that they have contemplated closing Gold Coast and ceasing all operations but have made no definitive decision to do so;

WHEREAS, Kwabena Asamoah Adejei, Christopher Ahenkora, and Michael Ahenkora understand that, in the event that Gold Coast ceases to operate or is sold or transferred, this Amended Consent Decree will remain binding on them if they are involved in any meat or poultry retailing or distribution business or any business that otherwise engages in activities that are subject to the FMIA and/or the PPIA without limitation to Gold Coast;

3

NOW, THEREFORE, with the consent of the United States, Gold Coast, and the Individual Defendants (collectively, the "Parties"), it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 21 U.S.C. § 467c, 21 U.S.C. § 674, and 28 U.S.C. §§ 1331, 1337, and 1345, and personal jurisdiction over all the Parties to this action.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## SUPERSEDING OF ORIGINAL CONSENT DECREE

3.      Upon the Court's entry of this Amended Consent Decree, the Original Consent Decree shall be superseded and replaced by this Amended Consent Decree.

## SUBSTITUTION OF DEFENDANTS

4.      Upon the Court's entry of this Amended Consent Decree, (i) all claims against Daniel Ahenkora or his estate shall be dismissed, and (ii) Kwabena Asamoah Adejei, Christopher Ahenkora, and Michael Ahenkora (collectively, the "Individual Defendants") shall be substituted as defendants in his place.

5.      Accordingly, the case caption shall be revised as follows:

UNITED STATES OF AMERICA,

                                    Plaintiff,

        v.

FIRST GOLD COAST CORPORATION d/b/a
GOLD COAST TRADING COMPANY,
KWABENA ASAMOAH ADEJEI,
CHRISTOPHER AHENKORA, and
MICHAEL AHENKORA,

                                    Defendants.

**ADMISSIONS**

6.      The Individual Defendants and Gold Coast (collectively, "Defendants") admit,

acknowledge, and accept responsibility for the following:

a.      On or about September 16, 2020, and on other dates, Gold Coast offered for sale 220 pounds of unlabeled, non-federally inspected, and prohibited smoked catfish—61 pounds of which was sold to retail customers and 159 pounds of which was voluntarily destroyed in the presence of an inspector from the USDA's Food Safety and Inspection Service ("FSIS").  These violations occurred after Gold Coast received a Notice of Warning dated January 29, 2018, which warned them that catfish products were subject to the FMIA.

b.      On or about July 3, 2021, Gold Coast sold 25 pounds of non-federally inspected, sliced goat head meat in unlabeled plastic bags, and offered for sale 97.7 pounds of smoked cow skins that lacked labeling or marks of federal inspection.

c.      On or about July 22, 2021, and other dates, Gold Coast offered for sale 180 pounds of non-federally inspected, prohibited smoked catfish (100.7 pounds of which were sold to retail customers and 79.3 pounds of which were voluntarily destroyed in the presence of an FSIS inspector).

d.      On or about September 13, 2022, Gold Coast received in commerce 18 pounds of misbranded beef products (cow skins, beef tongue, beef liver) in plastic bags that lacked labeling or marks of federal inspection.

e.    On or about October 12, 2022, Gold Coast sliced, processed, and packaged approximately 320 pounds of beef and goat products (burnt goat meat, cow feet, white cow tripe) without the benefit of federal inspection, and sold the products to a retail store.

f.    As part of a commercial agreement with another company dating back to September 2022, Gold Coast received in commerce 160 pounds of non-federally inspected, prohibited beef and chicken products (sliced beef feet, beef tripe, sliced beef oxtail, smoked chickens).

g.    On or about November 3, 2022, Gold Coast sold a retail store in Rochester, New York approximately 35 pounds of beef products and 50 pounds of goat in plastic bags that lacked labeling or marks of federal inspection.

h.    On or about January 26, 2023, Gold Coast also sold 50 pounds of beef products in plastic bags that lacked any labeling or marks of federal inspection to a retail store in Rochester, New York.

i.    The Individual Defendants were involved in the operations and/or management of Gold Coast on the dates when the violations of the Original Consent Decree occurred.

j.    Accordingly, Defendants have repeatedly violated the FMIA and PPIA and the record-keeping violations in the Original Consent Decree.

### INJUNCTIVE RELIEF

7.    ***Compliance with FMIA and PPIA.***  Defendants and each and all of their directors, officers, agents, servants, representatives, employees, successors, or assigns, and any and all persons in active concert or participation with them, directly or indirectly, who received actual notice of this Amended Consent Decree by personal service or otherwise, are hereby permanently restrained and enjoined from:

a.    selling, transporting, offering for sale or transportation, or receiving for transportation, any meat, meat food products,[1] poultry, or poultry products required to be inspected and passed by the USDA that have not been inspected and passed by USDA federal inspectors;

---

[1] For purposes of this Amended Consent Decree, meat food products include catfish and all fish of the order Siluriformes. *See, e.g.*, 21 U.S.C. § 601(w)(2), 21 U.S.C. § 606(b).

b.       causing any meat, meat food products, poultry, or poultry products, capable of use as human food, to be misbranded while they are being transported in commerce, or within the designated state of New York, or being held for sale after such transportation;

c.       selling, transporting, offering for sale or transportation, or receiving for transportation adulterated, misbranded, or unlabeled meat, meat food products, poultry, or poultry products, or any meat, meat food products, poultry, or poultry products that do not meet FMIA's or PPIA's labeling and container standards;

d.       preparing, processing, holding, or storing meat, meat food products, poultry, or poultry products in unsanitary conditions;

e.       failing to keep such records as will fully and correctly disclose all of defendants' meat-and-poultry-related business transactions as may be necessary for FSIS to enforce the FMIA and/or PPIA effectively and as required under 21 U.S.C. §§ 460(b) and 642 and 9 C.F.R. §§ 320.1 and 381.175;

f.       failing: (i) upon request of any authorized representative of the Secretary of Agriculture, and at all reasonable times, to afford representatives of FSIS full and immediate access to Gold Coast's meat and/or poultry-related facilities, inventory, and records, including to allow such representatives to copy such records and to take reasonable samples of defendants inventory upon payment of fair market value; (ii) to cooperate and not interfere with that access; and (iii) to refrain from harassing or intimidating FSIS representatives conducting reviews as required by 21 U.S.C. §§ 460(b), 461(c), 642, and 675; and

g.       failing to comply with all requirements of the FMIA, PPIA, and their implementing regulations that apply to preparing, processing, selling, transporting, or distributing meat, meat food products, or poultry products. These implementing regulations include, but are not limited to, those imposing requirements for: (i) inspection; (ii) labeling; (iii) sanitation (including sanitation performance standards and standard operating procedures); (iv) Hazard Analysis and Critical Control Point (HACCP) systems; and (v) Listeria monocytogenes and/or other pathogen sampling, testing, and other program obligations, as provided under 9 C.F.R. §§ 302.1, 310, 317, 381, 412, 416, 417, 418, and 430;

h.       engaging in any other conduct that would violate the FMIA, the PPIA, and/or the regulations promulgated thereunder.

8.    ***Federal Grant of Inspection.*** If Defendants perform or intend to perform operations which require a federal grant of inspection under the FMIA or the PPIA, in order to be issued a grant of federal inspection (a) Defendants will first contact FSIS' Philadelphia District Office (i) by phone at (215) 430-6231, (ii) by email to the FSIS's Office of Field Operations Philadelphia Grant Curator at Philadelphia.GrantCurator@fsis.usda.gov, or (iii) in person at the Lits Building, 701 Market Street, Suite 4100-A, Philadelphia, PA 19106, and apply for a Federal Grant of Inspection; (b) Gold Coast will not prepare or process meat, meat food products, or poultry products until FSIS issues a Federal Grant of Inspection except as permitted by Paragraph 9; and (c) Gold Coast will thereafter conduct such preparing, or processing activities under the conditions that FSIS and applicable laws impose.

9.    ***Retail Store***. If Defendants process or intend to process any federally inspected products without federal inspection as an exempt retail store in accordance with 9 C.F.R. §§ 303.1(d) or 381.10(d), Defendants must:

    a.    only use federally inspected source materials in the preparation of meat, meat food products, poultry, and poultry products (*see* 9 C.F.R. §§ 303.1(d), 381.10(d);

    b.    only make sales directly to consumers of meat, meat food products, poultry, and poultry products only in normal retail quantities (*see* 9 C.F.R. §§ 303.1(d) and 381.10((d);

    c.    comply with the FMIA and PPIA's adulteration and misbranding provisions, which apply to articles that are exempted from federal inspection (*see* 21 U.S.C. §§ 453 and 601);

    d.    maintain records (such as bills of sale to consumers, and of any raw ground beef production), as required by 9 C.F.R. §§ 320.1 and 31.175;

    e.    comply with periodic verification by FSIS, including verification that such operations are conducted in accordance with the regulatory requirements for the retail store exemptions found in 9 C.F.R. §§ 303.1(d) and 381.10(d).

10.     ***Compliance with Regulations.***  Defendants agree to comply at all times with all applicable requirements of the FMIA, PPIA, the regulations promulgated under the FMIA and PPIA, and Title 1, Part 271 of the Official Compilation of Codes, Rules & Regulations of the State of New York.

11.     ***Labeling.***  Defendants agree to ensure that their products meet all labeling requirements set forth in the FMIA and the PPIA and regulations promulgated thereunder, including but not limited to ensuring that their products are labeled with the following information when applicable: name and place of business; an accurate statement of the quantity of contents (in terms of weight, measure, or numerical count); any word, statement, or other information required by the PPIA or FMIA (such as safe handling instructions for products that are not ready to eat and/or must be kept frozen or refrigerated); any common or usual name of the food; the common or usual name of each ingredient if the product is fabricated from two or more ingredients; and any required nutrition labeling. *See, e.g.*, 21 U.S.C. §§ 453(h), 601(n)(5); 9 C.F.R. parts 317 and 381. Additionally, if Defendants elect to reuse boxes or other packaging materials from federally inspected establishments, Defendants must remove, cover, or otherwise eliminate the mark of federal inspection before reusing the box or other packaging.  *See* 9 C.F.R. §§ 317.1, 381.115.

12.     ***Mandatory Training.***  Within sixty (60) days of the date of the entry of this Amended Consent Decree by the Court, Defendants and all of their current employees must complete training and education in the FMIA and PPIA statutes and regulations, including requirements regarding labeling, sanitation, food safety, and product handling.  Defendants must submit a written description of the training and educational program they propose to implement, along with a copy of all training and educational materials, delivery methods, and training schedules, no later than twenty (20) days prior to conducting such training and instruction to the

FSIS Enforcement Operations Staff ("EOS") Director for review and approval. Defendants must implement this training for all new employees within five (5) working days of their commencement of employment. Defendants and their employees must complete this training on an annual basis and must ensure that adequate records of such training and educational programs are available to FSIS personnel for review and/or copying immediately upon request.[2]

13.    ***Access; Seizure.***  Defendants must, at all reasonable times, afford duly authorized representatives of the USDA full access to Defendants' establishment. "Full access" includes full and unimpeded opportunity to inspect and examine Defendants' establishment or facility, operations, equipment, inventory, and records; to copy all such records; and to take reasonable samples of inventory. "All reasonable times" means any hours during which Defendants are doing business at Defendants' establishment, including hours before dawn where applicable. Additionally, authorized representatives of the USDA shall have the right to detain, and seek judicial seizure of any non-federally inspected, adulterated, misbranded or non-exempt meat, meat food products, poultry, or poultry products in accordance with applicable laws, regulations, and USDA Food Safety Inspection Service directives.

14.    ***Business Changes.***  Defendants shall notify the United States in writing at least twenty (20) days before any change or cessation in ownership or character of their business, such as assignment or sale resulting in the creation or emergence of a successor corporation or business entity, the creation or dissolution of subsidiaries, change or alteration of the business form or name, or any other change in their business structure that may have an effect upon Defendants'

---

[2] Defendants are directed to online food safety education program providers that have been approved by the New York Department of Agriculture and Markets. *See* https://agriculture.ny.gov/system/files/documents/2024/03/approvedfoodsafetyeducationproviders.pdf (last visited August 21, 2024).

compliance with the terms of this Amended Consent Decree.  No transfer of ownership or

operation of Gold Coast shall relieve Defendants of their obligation to ensure that the terms of the

Amended Consent Decree are implemented, and at least twenty (20) days prior to any such

transfer, Defendants shall provide a copy of this Amended Consent Decree to the proposed

transferee.

15.     ***Related Entities; Other Operations.***  By signing this Amended Consent Decree,

each Defendant certifies that such Defendant has disclosed to counsel for the United States each

business entity engaged in meat, meat food products, poultry, or poultry products processing or

sale in which that Defendant has an ownership interest or an operational role.  In the event that a

Defendant acquires an additional ownership interest or begins an operational role in such business

entity after the execution of this Amended Consent Decree, such Defendant will notify counsel for

the United States of such business entity and interest or role within fifteen (15) days and shall

provide a copy of this Amended Consent Decree to such business entity.

16.     ***Violation of Sale Requirements.***  If Defendants fail to comply with the applicable

restrictions of Paragraphs 7(a)–(d) of this Amended Consent Decree, Defendants agree to the

following relief:

    a.   for the first violation, Defendants agree to pay to the United States a civil
         penalty of $500.00 per pound, or portion thereof, of meat, meat food
         products, and poultry products sold, transported, and/or offered for
         sale and/or transportation;

    b.   for every violation thereafter, Defendants agree to pay to the United States
         a civil penalty of $1,000.00 per pound, or portion thereof, of meat, meat
         food products, poultry, and poultry products sold, transported, and/or
         offered for sale and/or transportation.

17.     ***Violation of Other Requirements.***  If Defendants fail to comply with any applicable

requirement of the FMIA or PPIA and their regulations or with the requirements of this Amended

Consent Decree other than violations of the restrictions under Paragraphs 7(a)–(d), Defendants

agree to the following relief:

> a.     Defendants agree to pay to the United States a civil penalty of $500.00 per violation per day through the 14th day of violation;
>
> b.     Defendants agree to pay to the United States a civil penalty of $1,000.00 per violation per day from the 15th day of violation through the 30th day of violation; and
>
> c.     Defendants agree to pay to the United States a civil penalty of $2,500.00 per violation per day on or after the 31st day of violation.

18.     ***Distinct Remedy; Costs.***   The amounts set forth in Paragraphs 16 and 17 shall be

separate and apart from any other remedy that the United States may pursue for violations of this

Amended Consent Decree.   Should enforcement proceedings beyond this Amended Consent

Decree be necessary, Defendants agree that the United States shall be entitled to recover from

Defendants all reasonable costs and expenses incurred by the FSIS in any future enforcement

proceedings, including investigation time, preparation time, and reasonable attorneys' fees.

19.     ***Judicial Review.***   If Defendants disagree with a determination made by USDA

pursuant to Paragraphs 16 to 17 of this Amended Consent Decree, they may petition the Court for

an independent review of USDA's determination(s).   Any such petition must be filed within thirty

(30) days of USDA's determination(s) for which review is sought.   In reviewing USDA's

determination(s), the Court will apply the same standard of review applicable to review of final

agency action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*   Review shall be

based exclusively on the written record before the USDA at the time the decision was made.   No

discovery shall be taken by either party.   In the absence of a timely petition for review, USDA's

determination(s) will become final and unreviewable.   Defendants shall be liable for such relief as

the Court deems appropriate in a proceeding brought either *sua sponte* or by the United States, for any failure to comply with any terms of this Amended Consent Decree.

20. ***Other Rights and Remedies.*** This Amended Consent Decree does not limit any rights or remedies available to the United States for any violation of the FMIA or PPIA and their associated regulations, or any rights or remedies available to the United States for any criminal violations. Defendants hereby waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to violations of this Amended Consent Decree that may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment to the Constitution, the Excessive Fines Clause of the Eighth Amendment to the Constitution, any statute of limitations, or the doctrine of laches, this Amended Consent Decree bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Amended Consent Decree constitutes an agreement by the United States concerning the characterization of payments from Defendants to the United States for purposes of the Internal Revenue laws, Title 26 of the United States Code.

21. ***Future Regulatory or Administrative Actions.*** The Parties agree that nothing in this Amended Consent Decree shall preclude any future regulatory or administrative action authorized by law, regulation or otherwise, including, but not limited to the referral of any matter to any agency for possible criminal, civil, or administrative proceedings.

22. ***Contempt.*** Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its reasonable attorneys' fees, travel expenses incurred by attorneys and witnesses, expert witness fees, administrative and court costs, investigation and analytical

expenses incurred in bringing the contempt action, and any other costs or fees related to the contempt proceedings.

23.    ***Termination.***    After Defendants have maintained continuous satisfactory compliance with all requirements of this Amended Consent Decree, as well as all applicable provisions of the FMIA and PPIA, for a period of three (3) years following the entry of the Amended Consent Decree, Defendants may serve upon the United States a request for termination of the Amended Consent Decree ("Request for Termination"), explaining how Defendants have satisfactorily complied with all such requirements, together with all necessary supporting documents.  The Parties shall thereafter confer informally concerning the Request for Termination and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of the Amended Consent Decree.  If the United States agrees that the Amended Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Amended Consent Decree.  If the United States does not agree that the Amended Consent Decree may be terminated, Defendants may file a motion with this Court seeking relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, provided, however, that Defendants will not file any such motion until sixty (60) days after service of the Request for Termination on the United States.  Defendants must bear the burden of demonstrating to the Court that they have satisfactorily complied with all requirements of the Amended Consent Decree and applicable provisions of the FMIA and PPIA and that there is good cause to terminate the Amended Consent Decree under Rule 60(b).

24.    ***Provision of Copies; Declaration of Compliance.*** Defendants must provide a copy of this Amended Consent Decree to each of their officers, directors, and employees within ten (10) days of the date of entry of this Amended Consent Decree and must promptly thereafter provide

undersigned counsel for the United States with a sworn declaration of compliance that contains the information set forth below.  The sworn declaration must set forth the fact and manner of compliance with this paragraph and must identify the name and position of each person to whom a copy of this Amended Consent Decree was provided.  If the person does not have a formal title, the sworn declaration must set forth after such person's name the function that such person performs.

25.    ***Service.***  For purposes of this Amended Consent Decree, service upon USDA (in particular the Enforcement Operations Staff Director) and the United States must be accomplished by overnight delivery using a private carrier, *e.g.*, Federal Express or United States Postal Service certified mail with return receipt, and shall be made to the following addresses:

> For USDA:
>
> United States Department of Agriculture
> Food Safety and Inspection Service
> Office of Investigation, Enforcement and Audit
> Attention: Director, Enforcement Operations Staff
> 1400 Independence Avenue, Stop Code 3753
> Washington, DC 20250
>
> For the United States:
>
> United States Attorney's Office
> Southern District of New York
> Attn: Assistant U.S. Attorney Mark Osmond
> 86 Chambers Street, 3rd Floor
> New York, NY 10007

26.    ***Payments.***  If Defendants are required to make any payment pursuant to this Amended Consent Decree, Defendants will make such payment by electronic funds transfer pursuant to written instructions to be provided by the United States.

27.    ***Effective Date.***  The provisions of this Amended Consent Decree shall become effective immediately as to all Parties upon execution thereby.

28.    ***Jurisdiction.***  The Court retains jurisdiction to issue further decrees and orders as may be necessary to construe, carry out, modify, or enforce compliance with this Amended Consent Decree.

Dated: December 2, 2024
      New York, New York

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By: *Mark Osmond*
        MARK OSMOND
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2713
        E-mail: mark.osmond@usdoj.gov

Dated: Oct. 18. 2024
New York, New York

ROSE A. ROSSI
Rossi Law PLLC
180 So. Broadway, Suite 200
White Plains, NY 10605
Tel.: (914) 358-9755
Fax: (914) 358-9757
roserossilaw@gmail.com

*Attorney for All Defendants*

FIRST GOLD COAST CORPORATION d/b/a
GOLD COAST TRADING COMPANY

By: _____
[NAME] Josephine Ahenkora
[TITLE] Secretary

By: _____
KWABENA ASAMOAH ADJEI, in
individual capacity

By: _____
CHRISTOPHER AHENKORA, in individual
capacity

By: _____
MICHAEL AHENKORA, in individual
capacity

By: _____
[INSERT NAME], as administrator of the estate
of Daniel Ahenkora    - RANDY BRAKO.
                        (Letters pending)

18

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE
The Hon. Edgardo Ramos

Dated:        December 3, 2024
            _____
            New York, New York